# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| STEVEN POWELL, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | **Case No.:** |
| V. | ) | |
| | ) | |
| PILGRIM'S PRIDE CORPORATION, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| DEFENDANT(S). | ) | |
| | ) | |

# COMPLAINT

## JURISDICTION

1. Plaintiff brings this action for injunctive relief and damages under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by Defendant.

2. This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII) as well as under 42 U.S.C. § 1981 ("Section 1981").

3. The Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last

discriminatory act (Exhibit A). Plaintiff further sued within ninety (90) days after receiving the right-to-sue letter issued by the EEOC (Exhibit B).

## PARTIES

4. Plaintiff, Steven Powell, ("Plaintiff" or "Powell") is a resident of Guntersville, Marshall County, Alabama, and performed work for Defendant in the counties composing the Northern District of Alabama during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Middle Division.

5. Defendant Pilgrim's Pride Corporation ("Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama. It is subject to service of process in Alabama.

6. Defendant has more than five hundred employees.

7. Defendant's 2020 revenue was more than 12 billion dollars.

## FACTS

8. Plaintiff incorporates by reference and realleges each preceding paragraph as if set out herein.

9. Plaintiff is a person of African ancestry, colloquially referred to as Black.

10. Plaintiff began his employment with Defendant on or about August 12, 2019, as a Live Hanger.

11. Plaintiff's performance appraisals met Defendant's expectations.

12. On May 7, 2020, Plaintiff was driving a forklift. Rodney Jackson ("Jackson"), a Black male employee, asked Plaintiff to take a broken cage to the maintenance shack.

13. Another employee repaired the cage, and Jackson began to yell and insult Plaintiff.

14. Jackson continued yelling and insulting Plaintiff as Plaintiff parked the forklift, preparing for his lunch break.

15. Plaintiff clocked out in the break room. As he did so, Jackson approached him and continued to yell.

16. Jackson pushed Plaintiff and struck him in the face.

17. Plaintiff did not strike Jackson in return.

18. The Head Supervisor, Jim Ed LNU, walked Plaintiff to the Human Resources Office.

19. Plaintiff reported the incident with Jackson to Ms. Bishop ("Bishop"). Bishop sent Plaintiff home for the rest of the day.

20. The next day, Bishop called Plaintiff and informed him that a knife had been discovered on Jackson. However, Bishop stated there was no proof of the altercation from the previous day because the cameras in the break room did not work.

21. Upon information and belief, personal weapons are forbidden at Defendant's workplace.

22. Plaintiff spoke to Lonnie Brooks ("Brooks"), Bishop's supervisor.

23. Brooks told Plaintiff that witnesses had stated that Plaintiff was the aggressor.

24. Plaintiff was not the aggressor.

25. Brooks transferred Plaintiff to the first shift because Plaintiff no longer felt safe on the second shift.

26. On May 11, 2020, Plaintiff reported to the first shift.

27. When Plaintiff arrived at work, Defendant asked Plaintiff to sign a weapons sheet.

28. Plaintiff did not agree to sign a weapons sheet because he had signed one the day Defendant hired him.

29. Plaintiff had no weapons on May 10, the day before.

30. Karen LNU, the first shift supervisor, sent Plaintiff home.

31. The next day, May 12, 2020, Brent Lane ("Lane") attempted to terminate Plaintiff because he did not sign the weapons sheet.

32. Plaintiff spoke with Lane's boss and explained that he had already signed a weapons sheet.

33. Lane's boss told Plaintiff that they would not fire him but would give him a few days off while Defendant investigated the situation.

34. On May 14, 2020, Plaintiff returned to work.

35. A week later, Jackson started working the first shift as well.

36. From May 2020 to December 2020, Jackson worked the first shift on and off.

37. During that time, Jackson continued to harass Plaintiff. Plaintiff continued to report the harassment to his supervisors.

38. Jackson repeatedly informed other employees when Plaintiff was in earshot that he had a knife in his pocket.

39. Plaintiff's supervisors said they would remedy Jackson's behavior, but it did not stop.

40. On December 3, 2020, Jackson and his second shift supervisor were conversing in front of the timeclock blocking Plaintiff from clocking out.

41. Plaintiff politely asked Jackson and the supervisor to move, and Plaintiff clocked out.

42. No altercation took place.

43. There is no policy prohibiting employees from asking others to refrain from blocking the timeclock upon information and belief.

44. On December 4, 2020, Mrs. Jordan ("Jordan") asked Plaintiff to report to the Human Resources office.

45. Defendant terminated Plaintiff's employment on December 4, 2020.

46. Defendant claimed that Plaintiff was an aggressor on December 3.

47. Before Plaintiff's termination, Jeffery LNU and another white male, Mr. Bower, had similar issues to Jackson and Plaintiff. These employees were not terminated.

48. In November 2020, a white male and a black Haitian male had a physical altercation on the line. Defendant only terminated the black Haitian male.

49. Other employees who have not reported harassment have been able to ask others to step out of the way of the timeclock and were not fired.

## COUNT ONE TITLE VII - RACE DISCHARGE

50. Plaintiff incorporates by reference and realleges paragraphs 11 through 52 as if set out herein.

51. Plaintiff is a person of African ancestry, colloquially referred to as Black.

52. Plaintiff was qualified for the position of Live Hanger.

53. Defendant terminated Plaintiff's employment on or about December 4, 2020.

54. Other employees engaged in the same or similar conduct but remained employed.

55. Defendant's actions in terminating Plaintiff's employment violated Title VII.

56. Because Defendant violated Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

57. Defendant's race was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

58. Because of Defendant's discriminatory decision made in whole or in part because of his race, Plaintiff has lost pay and continues to be paid less.

**COUNT TWO 42 U. S. C. § 1981 DISCHARGE**

59. Plaintiff incorporates by reference and realleges paragraphs 11 through 52 as if set out herein.

60. Plaintiff is a person of African ancestry, colloquially referred to as Black.

61. Plaintiff was qualified for the position of Live Hanger.

62. On or about December 4, 2020, Defendant terminated Plaintiff's employment.

63. Because of Defendant's discriminatory decision made in whole or in part because of his race, Plaintiff has lost pay and continues to be paid less.

64. Because of Defendant's violation of 42 U. S. C § 1981, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

### COUNT THREE TITLE VII RACE HOSTILE WORK ENVIRONMENT

65. Plaintiff incorporates by reference and realleges paragraphs 11 through 52 as if set out herein.

66. Jackson harassed Plaintiff because of his race.

67. The harassment created a hostile work environment for Plaintiff.

68. Plaintiff reported Jackson's harassing behavior to their supervisors.

69. Defendant failed to take prompt remedial action to remedy the harassment.

70. Plaintiff suffered damages because of the hostile work environment, including loss of pay, benefits, and mental anguish.

### COUNT FOUR 42 U. S. C. § 1981 HOSTILE WORK ENVIRONMENT

71. Plaintiff incorporates by reference and realleges paragraphs 11 through 52 as if set out herein.

72. Jackson harassed Plaintiff because of his race.

73. The harassment created a hostile work environment for Plaintiff.

74. Plaintiff reported Jackson's harassing behavior to their supervisors.

75. Defendant failed to take prompt remedial action to remedy the harassment.

76. Plaintiff suffered damages because of the hostile work environment, including loss of pay, benefits, and mental anguish.

### COUNT FIVE TITLE VII RETALIATION

77. Plaintiff incorporates by reference and realleges paragraphs 11 through 52 as if set out herein.

78. Plaintiff was qualified for his position and able to perform the essential functions of the job of Live Hanger.

79. On several occasions between May and December 2020, Plaintiff engaged in protected activity when he reported discrimination based on race.

80. On or about December 4, 2020, Defendant terminated Plaintiff's employment.

81. But for Plaintiff's protected activity, Defendant would have retained Plaintiff in his position as a Live Hanger.

82. Defendant violated Title VII by terminating Plaintiff for engaging in protected activity.

83. Because Defendant violated the Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

### COUNT SIX 42 U. S. C. § 1981 RETALIATION

84. Plaintiff incorporates by reference and realleges each preceding paragraphs as if set out herein.

85. Plaintiff was qualified for his position and able to perform the essential functions of the job of Live Hanger.

86. On several occasions between May and December 2020, Plaintiff engaged in protected activity when he reported discrimination based on race.

87. On or about December 4, Defendant terminated Plaintiff's employment.

88. Plaintiff's protected activity was a motivating factor in Defendant's decision not to retain Plaintiff in his position as a Live Hanger.

89. Defendant violated the 42 U. S. C. § 1981 by terminating Plaintiff in whole or in part for engaging in protected activity.

90. Because of Defendant's violation of the 42 U. S. C. § 1981, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys, and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

B.  Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys, and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Section 1981;

C.  Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position he would have had, had he not been terminated;

D.  Award him back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

E.  Attorneys' fees and costs;

F.  Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

G.  Any other or additional relief as determined by the Court to which Plaintiff is entitled.

*Kira Fonteneau*
Kira Fonteneau (FON007)[1]

**OF COUNSEL:**

Barrett & Farahany
2 20th N. St. Suite 900
Birmingham, AL 35203

---

[1] Counsel is filing on behalf of plaintiff only for purposes of preserving his statute of limitations under the 90-day period from the Notice of Right to Sue and **not to continue representation.**

T: 205.564.9005

## PLEASE SERVE DEFENDANT AS FOLLOWS

**Pilgrim's Pride Corporation**

**c/o Corporation Service Company  Inc.**

**641 SOUTH LAWRENCE STREET**

**MONTGOMERY, AL 36104**

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA MIDDLE DIVISION

STEVEN POWELL,

    PLAINTIFF,

VS.                          CV NO.:

PILGRIM'S PRIDE CORPORATION,
    DEFENDANT.         JURY TRIAL DEMANDED

# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION
This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☐ EEOC | Agency(ies) Charge No(s): |
|---|---|---|

_____ and EEOC
State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Steven Powell | (b) (7)(C) 1 line redacted | |

| Street Address | City, State and ZIP Code |
|---|---|
| (b) (7)(C) 1 line redacted | Guntersville, ALABAMA 35976 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| Pilgrim's Pride | 150 | (256)582-5631 |

| Street Address | City, State and ZIP Code |
|---|---|
| 3500 Lake Gunnersville Park Dr. | Guntersville, AL 35976 |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)
☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 05/07/2020   Latest: 12/3/2020
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

1. I am a person of African ancestry, colloquially referred to as Black.
2. I began working for the Respondent on or about August 12, 2019, as a Live Hanger.
3. All of my performance appraisals met expectations.
4. On May 7, 2020, I was driving the forklift when Rodney Jackson, a Black male employee, told me to take the broken cage to the maintenance shack.
5. Another employee repaired the cage, and Jackson began to yell and insult me.
6. Jackson continued this behavior as I was parking the forklift, preparing for my lunch break.
7. I clocked out in the break room, and Jackson approached me and continued to yell.
8. Jackson pushed me and struck me in the face.
9. I did not strike Jackson in return.
10. Jim Ed LNU, the Head Supervisor, walked me to the Human Resource office.
11. I reported the incident to Ms. Bishop, and she told me to leave and go home for the day.
12. The next day, Ms. Bishop called and told me that they discovered a knife on Jackson, but there was no proof of what happened the day before because the cameras in the break room did not work.
13. Upon information and belief, personal weapons are forbidden in the workplace.
14. I spoke to Lonnie Brooks, Bishop's supervisor.
15. Brooks told me that they spoke to witnesses who said I was the aggressor.
16. I was not the aggressor.
17. Brooks transferred me to first shift because I no longer felt safe on second shift.
18. On May 11, 2020, I reported to first shift.
19. When I arrived at work the company asked me to sign a weapons sheet.
20. I told them I did not need to sign a weapons sheet because I already signed one the day the Respondent hired me.
21. I had no weapons the day before.
22. Karen LNU, the first shift supervisor, sent me home.

23. On May 12, 2020, Brent Lane attempted to terminate me because I did not sign the weapon sheet.
24. I spoke with Lane's boss and explained that I had already signed a weapons sheet.
25. He told me that they would not fire me but would give me a few days off until the Respondent investigated.
26. On May 14, 2020, I returned to work.
27. A week later, Jackson, who had violated the weapons policy started working first shift.
28. From May 2020 to December 2020, Jackson worked the first shift off and on.
29. During that time, Jackson continuously harassed me and I continued to report the behavior to the supervisors.
30. Jackson repeatedly informed other employees when I was near, that a knife was in his pocket.
31. The supervisors said they would remedy Jackson's behavior, but it did not stop.
32. On December 3, 2020, Jackson and his second shift supervisor were having a conversation in front of the timeclock blocking me from clocking out.
33. I politely asked them to move, and I was able to clock out.
34. No altercation took place.
35. Upon information and belief, there is no policy prohibiting employees from asking others to refrain from blocking the timeclock.
36. On December 4, 2020, Mrs. Jordan asked me to report to the Human Resource office.
37. The Respondent terminated my employment because they said I was an aggressor on the day before.
38. Before my termination, Jeffery LNU and another white male Mr. Bower had similar issues as Jackson and I had.
39. The Respondent did not terminate them.
40. In November 2020, a white male and a black Haitian male had a physical altercation on the line.
41. The Respondent only fired the black Haitian male.
42. Other employees who have not reported harassment have been able to ask others to step out of the way of the timeclock and were not fired.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY–When necessary for State or Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 03/10/2021           *Steven Powell*<br>Date               Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

*Fonteneau Firm LLC – Lawyers for Working People*

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

STEVEN POWELL,

    PLAINTIFF,

VS.                                             CV NO.:

PILGRIM'S PRIDE CORPORATION,
    DEFENDANT.                      JURY TRIAL DEMANDED

# EXHIBIT B

EEOC Form 161 (11/2020)  **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Steven L. Powell | From: | Birmingham District Office |
|---|---|---|---|
| | (b) (7)(C) 1 line redacted | | Ridge Park Place |
| | Guntersville, AL 35976 | | 1130 22nd Street South |
| | | | Birmingham, AL 35205 |

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 420-2021-00738 | MICHAEL G. ALBERT, Investigator | (205) 651-7043 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

**- NOTICE OF SUIT RIGHTS -**
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*for* James E Love Sr

September 24, 2021

**BRADLEY A. ANDERSON,**
District Director

Enclosures(s)       (Date Issued)

cc:  **PILGRIM'S PRIDE**
C/o Dylan Moore
1770 PROMONTORY CIR
Greeley, CO 80634

Kira Fonteneau
**FIVE POINTS LAW**
2151 Highland Avenue South
Suite 205
Birmingham, AL 35205

Enclosure with EEOC
Form 161 (11/2020)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***